WILLIAM J. CRESKE AND CHARLENE A. CRESKE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Creske v. Commissioner
Docket Nos. 21953-87, 21954-87, 21955-87.
United States Tax Court
T.C. Memo 1988-574; 1988 Tax Ct. Memo LEXIS 598; 56 T.C.M. (CCH) 878; T.C.M. (RIA) 88574; December 19, 1988. Gerald S. Walsh and David C. Keating, for the petitioners. Michael Calabrese, for the respondent. KORNER
MEMORANDUM *599 FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined income tax deficiencies and additions to tax with respect to the above parties as follows: Docket 21953-87
William J. and Charlene A. Creske
Additions to Tax, Sections
Year
Deficiency
6653(b)(1) [2]
6653(b)(2)
6661
1983
$ 21,308
$10,654
50% of interest
$ 5,327
due on $ 21,308
1984
7,929
3,965
50% of interest
1,982
due on $ 7,929 Docket 21954-87
Edward J. and Joyce Creske
Year
Deficiency
1983
$28,837
1984
22,092
Docket 21955-87
Wausau Tile, Inc. and Wausau Transit Ltd. (consolidated)
Additons to Tax, Sections
Year
Deficiency
6653(a)(1)
6653(a)(2)
6661
1983
$34,304.40
$1,715.22
50% of interest   $6,841.51
due on $ 19,667.27
1984
51,276.26
2,563.81
50% of interest   -
due on $ 7,680.01 After concessions, the following issues *600 remain for decision: (1) Whether expenses paid and deducted by Wausau Tile, Inc. for the construction of a personal residence for William and Charlene Creske constitute dividend income to Edward and Joyce Creske; (2) Whether the expenses paid and deducted for the construction of William and Charlene Creske's residence constitute embezzlement income to William and Charlene Creske; (3) Whether William and Charlene Creske are liable for an addition to tax for substantial understatement of income tax for 1983 and 1984, pursuant to section 6661; (4) Whether part of any underpayment of tax by Wausau Tile, Inc. is due to negligence or intentional disregard of rules or regulations under section 6653(a) for 1983 and 1984; and (5) Whether Wausau Tile, Inc. is liable for an addition to tax for substantial understatement of income tax for 1983, pursuant to section 6661. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Edward and Joyce Creske, husband and wife, resided in Mosinee, Wisconsin, at the time they filed their petition herein. Joyce Creske is a party *601 only by reason of signing a joint return. Edward opened his own tile and terrazzo business in the Mosinee area in 1953. He incorporated the business, known as Wausau Tile, Inc. in 1958. Edward was the sole shareholder and served as the chief executive officer and director of Wausau Tile, Inc. and its wholly owned subsidiary, Wausau Transit Ltd., in 1983 and 1984. The principal office of Wausau Tile, Inc. was in Weston, Wisconsin, during the years in dispute. Wausau Tile [3] maintained branch offices and distribution centers in Winter Haven, Florida and Banning, California during 1983 and 1984. The primary business of Wausau Tile was and continues to be the manufacture, sale, distribution and installation of cement, tile and terrazzo products, including terra lok brick, precast tables, waste containers, planters and playground equipment, fixtures and roof decking. As a secondary line of business, Wausau Tile was and is engaged in the retail sale of tile, carpeting, mill work and various other building accessories. Wausau Transit, a wholly owned subsidiary of Wausau Tile, was engaged in the transportation and distribution of Wausau Tile products. Wausau Tile and Wausau Transit *602 filed their consolidated Federal income tax returns for 1983 and 1984 on August 9, 1984 and September 13, 1985, respectively. Krause, Howard & Co., a local public accounting firm in Wausau, has performed accounting services for Wausau Tile since 1958, including preparation of consolidated financial statements, Federal and state income and employment tax returns and the rendition of general accounting, tax and business advice. In addition, Krause, Howard prepared, maintained and administered the Wausau Tile office payroll account and the notes payable accounts for both Edward and William Creske. Krause, Howard also prepared the joint Federal income tax returns of William and Charlene Creske, as well as Edward and Joyce. William J. Creske, Edward's son, who was born and raised in Wausau, Wisconsin, graduated from Mosinee High School and then attended the University of Wisconsin at Superior for two years and the University of Wisconsin at Stevens Point for one and one-half years. William and his wife Charlene resided in Mosinee, Wisconsin when they filed their petition. Charlene *603 is a party only by reason of signing a joint return. William became a part-time employee for Wausau Tile when he was fifteen years old. In 1972, he started working full-time with Wausau Tile as a general laborer , tile setter and bricklayer. William was both vice president and a director of Wausau Tile in 1983 and 1984. As vice president of Wausau Tile, William was manager of the physical plant, factory personnel director and chief purchasing officer. He also scheduled and expedited Wausau Tile crews that installed its terra lok brick product. William was an officer and director of Wausau Transit in 1983 and 1984. As an officer of Wausau Transit, William's primary duties included the setting of shipping rates and scheduling of product shipment, as well as setting compensation rates for drivers. Edward determined the annual bonus compensation payable by Wausau Tile to himself, William and other executives after consulting with representatives of Krause, Howard. Bonuses were paid in the form of promissory notes, which evidenced the obligation of Wausau Tile to pay such amounts in the future as compensation for services rendered. The promissory notes outstanding from Wausau *604 Tile to William and the interest earned thereon, were credited to his note account. During the years in question, Wausau Tile maintained general ledger notes payable accounts with respect to promissory notes to or from its officers. The notes payable accounts were manually prepared and maintained by Krause, Howard. William's particular account was designated as "Notes Payable - William Creske Account No. 2046-11." William's note payable account contained various posted entries related to the obligations of Wausau Tile to William, withholding taxes paid on his behalf and company payments for his personal expenses that drew down his note payable credit balance. All compensation and payroll records, including William's note payable account, were kept at Krause, Howard in order that they would remain confidential. This was done to maintain harmony among the office employees. The only office employee payroll records that were available to Wausau Tile's bookkeeping staff were transmitted to them by Krause, Howard and included only gross dollar amounts with respect to the gross office employee payroll, as well as the gross withholding tax dollar amounts. Neither William nor the bookkeeping *605 staff of Wausau Tile had access to William's note payable account. During 1983 and 1984, all invoices submitted to Wausau Tile for payment were reviewed by William and several other employees. The reviewers would place an expense account number on each invoice. The account numbers were taken from a list of approximately 67 expense accounts identifying the various kinds of expenses incurred by Wausau Tile in its business operations. After the appropriate expense accounts were marked on the invoices, they were given to Gordon Sullivan, the Wausau Tile bookkeeper, for posting. Invoices from certain vendors were automatically posted to predetermined expense accounts of Wausau Tile. Invoices from vendors without existing vendor numbers were assigned such a number by the Wausau Tile internal accounting staff and were posted to appropriate expense accounts. In early 1984 and early 1985, Gordon Sullivan delivered to Krause, Howard, lists of Wausau Tile expenditures that were identified as payments of William's personal expenses. These expenditures were posted to William's note payable account by Krause, Howard. Wausau Tile processed 6,841 vendor invoices in 1983 and 7,287 vendor invoices *606 in 1984, with a combined two-year monthly average of 589. Wausau Tile dealt with approximately 450 regular suppliers in 1983, and approximately 670 regular suppliers in 1984. The aggregate balance due and payable by Wausau Tile to William at the end of 1982, attributable to past bonuses and the interest earned thereon, was $ 146,172.10. As part of his compensation, William received a promissory note bonus on March 1, 1983 in the amount of $ 90,000 and another promissory note bonus on March 1, 1984 in the amount of $ 90,000 both of which were credited to his note payable account. These bonuses were declared as income by William in the year in which the bonus was declared and Federal and state income taxes were withheld on his behalf. William and Charlene also reported interest income from the Wausau Tile note payable of $ 11,777 and $ 15,930 for 1983 and 1984, respectively. In his capacity as the chief executive officer and sole shareholder of Wausau Tile, William's father Edward expressly authorized and approved Wausau Tile's payment of the costs of building a home for William as a way of repaying the note payable to him. Thus, Wausau Tile paid many of the expenses incurred *607 during 1983 and 1984 that related to the purchase of a lot of land and the subsequent construction of William's personal residence in Mosinee. During 1982 and 1983, payments were made by Wausau Tile to pay off a mortgage that William held on his then-existing residence. These mortgage payments were manually posted to William's note payable account by employees at Krause, Howard. The building site for the new residence was purchased with four checks that were issued by Wausau Tile and posted by Krause, Howard to William's note payable account. Prior to the commencement of construction of William's new residence, Edward told Don Howard , a partner at Krause, Howard , that Wausau Tile would pay for portions of the cost of such construction as payments against the outstanding balance of indebtedness due from Wausau Tile to William. Howard informed Edward that no special accounting procedures would be required in this matter and that Krause, Howard would adjust out all of William's personal expenses and reduce William's note payable accordingly. William was able to obtain significant discounts by purchasing labor and materials for construction of his residence through Wausau Tile's *608 suppliers. Several suppliers that furnished labor and materials in connection with the construction of William's residence were also regular suppliers for Wausau Tile. Many building materials were purchased at wholesale prices or were purchased from dealers and manufacturers who did not sell products to the public. An additional two-percent discount was generally available to Wausau Tile if the bill was paid within ten days of receipt. The Wausau Tile accounts payable system was organized so that invoices offering a discount would be timely paid so as to obtain the lowest price possible. William and Charlene began construction of their new residence in March 1983. In addition to the funds drawn from William's note payable at Wausau Tile, William and Charlene took out a loan with Citizens Bank and Trust of Wausau, Wisconsin, to finance the construction and furnishing of the new residence. The aggregate principal amount loaned by Citizens Bank and Trust that William and Charlene used to construct and furnish their new home was $ 126,040, which was secured by a mortgage on the new residence. Wausau Tile issued approximately 65 checks in the amounts of $ 42,755 and $ 16,696, during *609 1983 and 1984, respectively, that were issued for the construction of William and Charlene's new residence but which were not posted to William's note payable account. However, construction and personal expenses of $ 22,550 and $ 42,587 were posted to William's note payable during 1983 and 1984, respectively. The expenses that were not posted to William's note payable account were deducted by Wausau Tile as ordinary and necessary business expenses. Respondent determined that payments by Wausau Tile for the construction of William's residence in the amounts of $ 42,755 and $ 16,696 in 1983 and 1984, respectively, constituted constructive dividend payments to William's father, Edward, who was the sole shareholder of Wausau Tile. Respondent also determined that William embezzled these funds from Wausau Tile by intentionally failing to earmark that invoices in such a manner that they would be charged against his note payable. Respondent determined that William and Charlene were liable for additions to tax under sections 6653(b)(1) and 6653(b)(2), [4] and that they were liable for an addition to tax pursuant to section 6661, for 1983 and 1984. In addition, respondent determined that *610 Wausau Tile was liable for addition to tax pursuant to sections 6653(a)(1) and 6653(a)(2) in 1983 and 1984, as well as an addition to tax pursuant to section 6661 in 1983. OPINION Petitioners claim that the construction costs incurred by Wausau Tile for the construction of William's personal residence constituted repayment of a note payable that Wausau Tile owed to William and that any failure to charge such costs to William's note payable was an unintentional mistake. Petitioners bear the burden of proving that amounts paid by Wausau Tile for the construction of William's personal residence were neither constructive dividends to Edward, nor embezzlement income to William. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a).[5]
A dividend is defined by section 316(a) as any *611 distribution of property by a corporation to shareholders with respect to its stock to the extent it has adequate accumulated or current year earnings and profits. Where a corporation confers an economic benefit on a shareholder without the expectation of repayment, that benefit constitutes a constructive dividend, taxable to the shareholder, even though neither the corporation nor the shareholder intended a dividend. Loftin & Woodard, Inc. v. United States,577 F.2d 1206, 1214 (5th Cir. 1978); Benes v. Commissioner,42 T.C. 358, 379 (1964), affd. 355 F.2d 929 (6th Cir. 1966); Magnon v. Commissioner,73 T.C. 980, 993-994 (1980). It is well established that a constructive dividend can be attributed to a shareholder even though the benefit was conferred upon a third party. In Nicholls , North, Buse Co. v. Commissioner,56 T.C. 1225 (1971), we addressed the question of whether the personal use of a corporate yacht *612 by a minority stockholder could be attributed to his father, who was the majority shareholder in the corporation. Citing Helvering v. Horst,311 U.S. 112 (1940), we held that the personal use of the yacht was a constructive dividend to the father: "The power to dispose of income is the equivalent of 'ownership' of it and the exercise of that power to procure the payment of income to another is the 'enjoyment' and hence the 'realization' of the income by him who exercises it." Nicholls , North, Buse Co. v. Commissioner,56 T.C. at 1239. In the instant case, the parties have stipulated that Wausau Tile maintained a note payable account for William and that substantial costs associated with constructing William's house were posted to his account. The questions presented in the instant case are whether Edward and/or William intended not to notify Wausau Tile of specific construction bills which should have been (but were not) posted to his note payable account and instead were erroneously deducted by Wausau Tile. First, we note that substantial portions of the construction costs incurred by Wausau Tile on William's behalf were in fact deducted *613 from his note payable. Although $ 58,772 of the expenses incurred in the construction of the house were not properly posted, $ 65,137 worth of expenses were deducted from William's note payable. Many of these posted expenses involved land contract and mortgage payments made during 1983 and 1984. Krause, Howard was specifically instructed by Edward to post William's personal expenses to his note; however, Krause, Howard in some cases failed to isolate William's personal expenses from the thousands of ordinary invoices it routinely received from Wausau Tile's internal accounting department. Edward Creske, the sole shareholder and chief executive officer of Wausau Tile, expressly consented to William's plan to build his residence from the proceeds of his accrued bonuses. [6] We believe that William intended to pay for all his construction expenses as they were incurred, and evidence of the substantial amounts that were posted to his note payable point to that conclusion. It is clear that William had the financial ability *614 to pay the construction costs incurred by Wausau Tile. William's note payable credit balance far exceeded the construction costs incurred by Wausau Tile in building his residence and he was financially capable of paying for all personal expenses that were incurred by drawing down such note; in fact, he was under the assumption that this had already been done. Finally, petitioners did not attempt to conceal any of William's personal expenses from respondent during audit. Although the petitioners have not wholly explained the mechanics of the bookkeeping error, they were forthright and credible. The failure to post all of William's personal expenses to his note payable appears to be the result of inherent inadequacies in Wausau Tile's bookkeeping department, which did not provide adequate procedures for identifying these expenditures. There were no elaborate procedures by which William or Edward attempted to conceal expenses from the bookkeeper or the outside accountant and there was no conscious decision by Edward or William to make the corporation bear these costs. In addition to the above factors, William had reasons for using Wausau Tile as a conduit to pay for his personal *615 residential construction expenses. The substantial discounts available to those who purchase on the wholesale level could not have been realized had William made the purchases directly. It also made sense for William to use assets available to him to finance construction rather than incur the additional costs of financing the construction totally through banks. On the evidence presented, we hold that the expenses that Wausau Tile incurred in the construction of William's personal residence do not constitute constructive dividends to Edward in his capacity as the sole shareholder of Wausau Tile. We cannot find here any benefit passing from the corporation to Edward nor, at his direction, to William, which would sustain any theory of constructive dividend. We hold that petitioners have proven that amounts incurred by Wausau Tile on William's behalf were repayments of indebtedness that Wausau Tile owed William in his capacity as a creditor of the corporation and that William intended that such expenses were to have been posted to his note payable. Such amounts do not constitute embezzlement income to William. William's personal expenses, however, may not be deducted by Wausau *616 Tile as ordinary and necessary business expenses, and Wausau Tile has conceded that respondent's determination to this effect is correct. Additions to Tax
The additions to tax that must be considered are as follows: (1) whether Wausau Tile is liable for additions to tax, pursuant to sections 6653(a)(1) and (2), for 1983 and 1984, as well as under section 6661 for 1983 alone; and (2) whether William and Charlene Creske are liable for an addition to tax, pursuant to section 6661 for 1983 and 1984. 1. Section 6653(a)(1) imposes an addition to tax in the amount of 5 percent of an underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of the rules and regulations. In addition, section 6653(a)(2) imposes a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence, which respondent determined was the deduction by Wausau Tile of William's personal expenses. Negligence is defined as a failure to exercise the due care that a reasonable and ordinarily prudent person *617 would under the circumstances. Marcello v. Commissioner,380 F.2d 499, 506 (5th Cir. 1967); Neely v. Commissioner,85 T.C. 934, 947 (1985). Wausau Tile bears the burden of proving that their underpayment of tax as a result of deducting William's personal expenses was not attributable to negligence or intentional disregard of the rules and regulations. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). It is difficult to isolate one specific person or entity to bear the blame for failing to cull out William's personal expense invoices from all the other legitimate business expenses; however, it is not necessary for us to find the proximate cause of the problem in order to hold that Wausau Tile's underpayment of tax attributable to the deduction of personal expenses was negligent within the meaning of section 6653(a). It is simply not enough for Wausau Tile to point the finger at their accounting firm when it is apparent that Krause, Howard had no way of knowing which invoices were incurred in the construction of William's residence and which invoices were ordinary and necessary business expenses. The responsibility for this *618 breakdown in communication between William, the in-house bookkeeping staff and Krause, Howard must be borne by Wausau Tile, because it failed to exercise the due care that was expected of it under the circumstances. We hold that Wausau Tile has failed to carry its burden to show that it was not negligent, as determined by respondent. Section 6661 provides for an addition to tax for a substantial understatement of income tax liability as follows: SEC. 6661. SUBSTANTIAL UNDERSTATEMENT OF LIABILITY. (a) ADDITION TO TAX. -- If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. (b) DEFINITION AND SPECIAL RULE. -- (1) SUBSTANTIAL UNDERSTATEMENT. -- (A) IN GENERAL. -- For purposes of this section, there is a substantial understatement of income tax for any taxable year if the amount of the understatement for the taxable year if the amount of the understatement for the taxable year exceeds the greater of -- (i) 10 percent of the *619 tax required to be shown on the return for the taxable year, or (ii) $ 5,000. (B) SPECIAL RULE FOR CORPORATIONS. -- In the case of a corporation other than an S corporation or a personal holding company (as defined in section 542), paragraph (1) shall be applied by substituting "$ 10,000" for "$ 5,000." (2) UNDERSTATEMENT. -- (A) IN GENERAL. -- For purposes of paragraph (1), the term "Understatement" means the excess of -- (i) the amount of the tax required to be shown on the return for the taxable year, over (ii) the amount of the tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)). (B) REDUCTION FOR UNDERSTATEMENT DUE TO POSITION OF TAXPAYER OR DISCLOSED ITEM. -- The amount of the understatement under subparagrah (A) shall be reduced by that portion of the understatement which is attributable to -- (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed *620 in the return or in a statement attached to the return. * * * In addition to William's personal expenses that were improperly deducted, Wausau Tile took other substantial deductions that were disallowed by respondent and which the parties settled before trial. These deductions included capital expenditures deducted as repairs, capital expenditures deducted as supplies, personal expenses that were deducted as travel and entertainment expenses and other miscellaneous expenses that respondent alleged were improperly deducted. Although Wausau Tile does not claim that it had substantial authority for the above deductions that were disallowed and subsequently settled, it contends that the relevant facts affecting its tax liability were adequately disclosed on the tax return. Except for the $ 17,211 of repairs that respondent determined were capital expenditures (but which respondent treated as adequately disclosed in his statutory notice of deficiency), we hold that no other relevant factors concerning its tax liability were adequately disclosed for purposes of determining the understatement, pursuant to section 6661. [7]
*621 Petitioners claim that the correct rate of addition to tax should be 20 percent under section 6661, instead of 25 percent. They claim that the Omnibus Budget Reconciliation Act of 1986, Pub. Law 99-509, 100 Stat. 1874 ("OBRA"), which increased the rate of addition to tax to 25 percent, was enacted one day before the Tax Reform Act of 1986, Pub. Law 99-514, 100 Stat. 2085 ("TRA"), which itself increased the section 6661 rate of addition to tax to 20 percent. Although OBRA repealed the TRA rate of addition to tax, petitioners claim that the TRA addition to tax rate of 20 percent takes precedence over the 25-percent addition to tax rate of OBRA because TRA was enacted one day after OBRA was enacted. We rejected this argument in Pallottini v. Commissioner,90 T.C. 498 (1988), and decline to revisit this question. We hold that the 25-percent addition to tax of section 6661 applies to Wausau Tile, if the Rule 155 computation herein shows that the minimum of section 6661(b)(1) has been exceeded for 1983. 2. The section 6661 addition to tax does not, however, apply to William and Charlene Creske, because they had no deficiencies for 1983 or 1984, hence no substantial *622 understatement within the meaning of section 6661. To reflect the foregoing, Decision will be entered for petitioners in docket No. 21953-87.
Decision will be entered under Rule 155 in docket Nos. 21954-87 and 21955-87.
Footnotes
1. The cases of the following petitioners are consolidated herewith: Edward J. Creske and Joyce Creske, docket No. 21954-87; and Wausau Tile, Inc., Wausau Transit Ltd., docket No. 21955-87.↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
3. Wausau Tile, Inc. and Wausau Transit Ltd. will hereinafter be referred to as "Wausau Tile."↩
4. Respondent has since conceded the additions to tax for fraud.↩
5. Although each determination in the separate cases of William and Edward is presumptively correct, it is clear that they are inconsistent, and that both cannot prevail (if either can) in this consolidated litigation.↩
6. Edward apparently found nothing amiss in William's working out the credit balance in this way; nor would we, if the accounting had been correctly handled.↩
7. We also note that in the Rule 155 computation the "understatement" must be reduced by any withholding credits in determining the "underpayment" to which the sec. 6661 addition to tax applies. See Woods v. Commissioner,91 T.C. 88↩ (1988).